PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019
Telephone: 212-858-1000
Facsimile: 212-858-1500
John A. Pintarelli
Rahman Connelly

*Attorneys for Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>IIG Global Trade Finance Fund Ltd. (in Official Liquidation), *et al.*,<br><br>　　　　　Debtors. | Case No. 20-10132 (MEW)<br><br>Chapter 15<br><br>Jointly Administered |
| IIG Global Trade Finance Fund Limited (in Official Liquidation) and IIG Structured Trade Finance Fund Ltd. (in Official Liquidation),<br><br>　　　　　Plaintiffs,<br><br>　　　　v.<br><br>Bank Leumi USA,<br><br>　　　　　Defendant. | Adv. Pro. No. __-_____ (MEW)<br><br>Complaint |

## COMPLAINT

　　　　Plaintiffs IIG Global Trade Finance Fund Ltd. (In Official Liquidation) ("GTFF") and

IIG Structured Trade Finance Fund Ltd. (in Official Liquidation) ("STFF," and together with

GTFF, the "Debtors" or "Plaintiffs") by and through Christopher Kennedy and Alexander

Lawson, the duly appointed joint official liquidators (the "Liquidators") and recognized foreign

representatives of the Debtors, as and for their complaint for turnover and violation of the stay against defendant Bank Leumi USA ("Bank Leumi" or "Defendant"), allege as follows:

## NATURE OF THE ACTION

1.      This action relates to funds that are or were held in fourteen collection accounts (collectively, the "Collection Accounts") that are or were maintained by Bank Leumi in New York in the name of Trade Finance Trust ("TFT"), and that are or were held in trust for the Debtors and other investors in trade finance loans originated and/or sold by TFT and its affiliates.   By this action, the Liquidators seek a judgment: (a) directing the Defendant to turn over or disgorge at least $226,534.87 of funds belonging to the Debtors that are currently held in the Collection Accounts; (b) directing the Defendant to pay, as damages, at least $219,651.90 of funds that it improperly withdrew from the Collection Accounts to effectuate a purported set-off; and (c) declaring that the Defendant's improper set-off violated the automatic stay under section 362(a)(3) of the Bankruptcy Code and is thus void as a matter of law.

2.      The Collection Accounts were formed in connection with separate but substantially identical master participation agreements between TFT and each of the Debtors. Under the master participation agreements, TFT agreed to sell participation interests in loans purportedly made to various third-party borrowers from time to time.   Upon selling the participation interests to the Debtors, TFT retained no economic interest in the participation amounts.   However, TFT's affiliate, non-party IIG Trade Finance LLC ("IIG Trade Finance"), continued to act as administrator in an administrative capacity on TFT's behalf and on behalf of the Debtors.   Therefore, while the Debtors acquired beneficial ownership of the loans and the loan documents through the loan participations, they continued to rely on TFT and IIG Trade

2

Finance to enforce the outstanding obligations against the underlying obligors, collect principal and interest payments, and perform other ministerial tasks.

3.      As part of their duty to the Debtors under the master participation agreements, TFT and IIG Trade Finance agreed to establish segregated collection accounts to collect principal and interest payments made on the underlying loans and hold the funds "in trust" for the benefit of GTFF and STFF.  Thus, each of the Collection Accounts was formed pursuant to the master participation agreements as a trust account to collect proceeds from loans in which GTFF and STFF hold participation interests.

4.      Under the plain language of the master participation agreements and applicable law, GTFF and STFF have an ownership interest in the funds held in the Collection Accounts in an amount proportional to their participation interests in the loans for which the accounts were formed.   On July 31, 2020, the Debtors filed a motion in their administratively consolidated chapter 15 cases seeking entry of an order (a) authorizing them to enter into an assignment agreement with TFT to elevate their participation interests into full ownership of certain trade finance loans, and (b) entrusting the monies held in twelve of the Collection Accounts, as monies held in trust for the Debtors, subject to certain third parties' rights to funds in the collection accounts.  Two Collection Accounts that were not subject to the entrustment portion of the July 31st motion – TFT – Relafir S.A. and TFT – Polebrook are still open with balances in excess of $225,000.00.  The loans related to those accounts are subject to the assignment agreement.

5.      On October 8, 2020, this Court entered an order approving the Debtors' entry into the assignment agreement with TFT and providing that upon the effectiveness of the assignment agreement, the Debtors would become the legal owners of the Transferred Loans (as defined in the assignment agreement).  The assignment agreement became effective on the same day.  The

3

Debtors are the only parties, other than TFT or Trade Finance Funding I, Ltd. ("TFFI LTD"), the entity from which TFT acquired the Transferred Loans, that ever had any economic interest in loans purportedly made to affiliates of Relafir S.A. ("Relafir"), including Polebrook International, Inc. ("Polebrook"). Those loans are also Transferred Loans under the assignment agreement.

6.      The Debtors also entitled to funds that were held in the Collection Accounts during the pendency of GTFF's chapter 15 case (which was filed on January 17, 2020 and recognized by this Court on February 19, 2020) but were improperly withdrawn by Bank Leumi. On April 17, 2020, Bank Leumi withdrew funds from the Collection Accounts, *pro rata*, to satisfy a $200,000 debt owed by IIG Trade Finance under a line of credit plus approximately $34,756.66 of attorneys' fees it had incurred in connection therewith. At the time, Bank Leumi had notice of GTFF's chapter 15 case and was aware of the Debtors' ownership interests in the monies held in the Collection Accounts. However, Bank Leumi did not obtain relief from the automatic stay before effectuating the purported set-off.

7.      The funds held in the Collection Accounts were not assets of IIG Trade Finance and accordingly could not be used by Bank Leumi to effectuate a set-off against a debt owed by IIG Trade Finance. Instead, Bank Leumi had a duty under the Bankruptcy Code and applicable law to preserve the funds and turn them over to the Debtors. By failing to adhere to that duty and wrongfully seizing funds that belonged to GTFF and STFF, Bank Leumi was unjustly enriched.

8.      Accordingly, by this action, the Liquidators seek a judgment directing the Defendant to (a) turn over the funds in two of the Collection Accounts that belong to the

4

4840-2143-4089

Debtors, and (b) turn over or disgorge the funds that Bank Leumi improperly withdrew from the Collection Accounts to effectuate the improper set-off.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

10.      Venue is proper in this district under 28 U.S.C. § 1409(a). This adversary proceeding is related to the above-captioned chapter 15 cases, pending in this Court.

11.      This adversary proceeding is commenced pursuant to Federal Rule of Bankruptcy Procedure 7001(1), and sections 542 and 1521 of the Bankruptcy Code.

12.      The Liquidators consent to entry of a final order or judgment by the Bankruptcy Court in this matter.

## PARTIES

13.      The Debtors are exempted limited liability companies incorporated under the laws of the Cayman Islands that are in official liquidation before the Grand Court of the Cayman Islands. The Liquidators were appointed by the Grand Court of the Cayman Islands (the "Grand Court") to oversee the Debtors' liquidation proceedings and are the recognized foreign representatives in the Debtors' Chapter 15 cases pending in this Court.

14.      On information and belief, Defendant Bank Leumi is an FDIC Insured, New York State chartered bank.  On information and belief, Bank Leumi's corporate headquarters and principal place of business are located in New York, New York.

4840-2143-4089

## NON-PARTIES

15.     Trade Finance Trust is a Delaware statutory trust established under the laws of the State of Delaware. Trade Finance Trust is the nominal account holder for the Collection Accounts, which are or were maintained by Bank Leumi in New York.

16.     IIG Trade Finance LLC is a New York limited liability company and has its principal place of business in New York.   IIG Trade Finance previously served as the administrator under the Master Participation Agreements (as defined below).

17.     The International Investment Group L.L.C. ("IIG") is a New Jersey investment advisory company headquartered in New York, New York.   It is an investment advisor under the 1940 Act and registered as such with the SEC.   IIG was founded in 1994 and is owned 50% each by non-parties David Hu and Martin Silver, who are also its sole principals.   IIG owns IIG Capital as a wholly-owned subsidiary, and it is affiliated with and/or controls, a group of approximately 25 companies and funds.

18.     IIG had control or considerable influence over every party to this adversary proceeding other than the Liquidators and Bank Leumi.   In addition to being the sole owner of IIG Capital, IIG's principals and sole owners, David Hu and Martin Silver, are also the principals and sole owners of Defendant IIG Trade Finance.   Thus, Messrs. Hu and Silver controlled both entities that acted as agents for TFT.

## FACTUAL BACKGROUND

### I.  The Debtors' Chapter 15 Filings

19.     On January 17, 2020, the Liquidators filed a petition for relief under chapter 15 of the Bankruptcy Code on GTFF's behalf in this Court.   On February 19, 2020, this Court entered an order recognizing GTFF's Cayman liquidation proceeding as a foreign main proceeding

6

pursuant to section 1517 of the Bankruptcy Code and recognizing the Liquidators as GTFF's foreign representatives. Under the Bankruptcy Court's order, and by operation of law, recognition of GTFF's Cayman liquidation proceeding as a foreign main proceeding resulted in imposition of an automatic stay pursuant to section 362 of the Bankruptcy Code against any actions to obtain or assert control over GTFF's assets located in the United States.

20. Thereafter, on May 8, 2020, the Liquidators filed a chapter 15 petition in the Bankruptcy Court on behalf of STFF, seeking recognition of STFF's Cayman liquidation proceeding as a foreign main proceeding. On June 17, 2020, the Bankruptcy Court entered an order recognizing STFF's Cayman liquidation proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code and recognizing the Liquidators as GTFF's foreign representatives.

21. The chapter 15 cases of GTFF and STFF are being jointly administered under Case No. 20-10132 (MEW) in accordance with the provisions of Bankruptcy Rule 1015.

**II. The Debtors' Pre-Bankruptcy Business and the Master Participation Agreements**

22. GTFF and STFF were both incorporated as exempted limited liability companies under the laws of the Cayman Islands. Prior to entering liquidation, GTFF and STFF had the same two directors: Andrés Carral Cuevas and Martin Laidlaw. Both entities carried on their business as investment funds for the benefit of investors that purchased participating shares. Their objective was to invest their capital primarily in trade finance loans and other related financing transactions, which predominantly involved obligors based in emerging market countries.

23. GTFF and STFF are parties to separate but substantially identical investment advisory agreements with IIG, pursuant to which each entity appointed IIG as its investment

7

advisor.  Under the terms of their respective investment advisory agreements, GTFF and STFF granted IIG authority to make investments on their behalf in trade finance loans and other similar transactions.

24.    IIG, as investment advisor, caused GTFF and STFF to enter into separate but substantially identical master participation agreements with TFT in mid-2017 (the "Master Participation Agreements").    Pursuant to the Master Participation Agreements, TFT sold participation interests in various trade finance loans to GTFF and STFF from time to time.  TFT did not originate all of the loans that it ultimately participated to the Debtors.  Rather, it acquired legal ownership of many of those loans through various assignment and transfer agreements pursuant to which the originator transferred all of its right, title and interest in the loans to TFT.

25.    The Master Participation Agreements provide that upon the sale of a participation, TFT shall be deemed to "assign[ ] to [GTFF or STFF, as applicable], without recourse, such seller's entire right, title and interest in and to the respective Participation Interest (and does not retain or hold any right, title or interest therein)."  Thus, when GTFF or STFF acquired a participation in a particular loan, they were entitled to "all corresponding rights in payments thereunder and in all Collateral and proceeds thereof."

26.    Under the Master Participation Agreements, IIG Trade Finance served as administrator (in such capacity, the "Administrator") of the loans.  The Master Participation Agreements provide for the appointment of the Administrator by GTFF and STFF, as applicable, as agent to bill for, collect and hold "in trust" in segregated collection accounts, and disburse to them, their pro rata share of all principal and interest payments made by the underlying obligors and all amounts realized against any collateral pledged by an obligor.

8

27.     Under the Master Participation Agreements, GTFF and STFF held partial ownership interests, in the amount of their ratable shares, of a fund received by TFT or the Administrator, as agent for all participants.  For example, the Master Participation Agreements provided as follows:

> All monies collected within a relevant collection account from or on behalf of an Obligor in respect of a Facility in which Participant holds a Participation Interest(s) shall be held within segregated collection accounts for such Facility, and to the extent allocable to a Participation Interest of Participant, be held in such collection account in trust for Participant for the purpose for which they were paid, but need not be segregated in any manner from any other monies therein allocable to the interests of Seller or any other Person.

28.     On information and belief, TFT and/or the Administrator opened separate collection accounts for each of the underlying loans in which GTFF and STFF purchased participations.

### III. The Loans

### Polebrook

29.     On or about December 30, 2009 IIG Capital, as agent for TOF NV, and Polebrook entered into that certain Master Loan Agreement pursuant to which TOF NV, as lender, extended Polebrook a line of credit for the amount of up to Ten Million  U.S. Dollars ($10,000,00).

30.     On or before June 1, 2017, TFFI LTD purportedly funded a $2,850,000 loan to Polebrook (the "Polebrook Loan").

31.     On or about June 6, 2017, TFFI LTD and TFT entered into that certain Purchase and Sale Agreement (as amended, the "TFFI LTD Purchase Agreement"), pursuant to which TFFI LTD sold to TFT all of TFFI LTD's right, title and interest in, to and under the Conveyed Assets (as defined in the TFFI LTD Purchase Agreement), which included the Polebrook Loan.

32.     Contemporaneously therewith, GTFF acquired a participation interest for the full amount of the Polebrook Loan.

9

**Relafir**

33.     On or about June 6, 2017, TFFI LTD sold to TFT its right, title, and interest in, to loans purportedly made to Relafir S.A. for the benefit of various related parties under promissory notes totaling more than $20,000,000 (the "Relafir Loans").

34.     Contemporaneously therewith, GTFF acquired participation interests in the Relafir Loans.

**Proexpo, Procesadora y Exportadora de Mariscos S.A. ("Proexpo")**

35.     On or about January 22, 2018, TFT and Proexpo entered into that certain master loan agreement pursuant to which TFT, as lender, extended Proexpo a revolving line of credit for the amount of up to Five Million U.S. Dollars ($5,000,000).

36.     From and after January 22, 2019, TFT advanced funds to Proexpo at various times (the "Proexpo Loans").

37.     Pursuant to the Master Participation Agreements, the Debtors acquired participation interests in, and funded, each of the Proexpo Loans.

**Ivorfield Trading Corp. ("Ivorfield")**

38.     On or after June 1, 2016, the Debtors purchased participation interests in a lending facility made to Ivorfield, as borrower, dated July 17, 2009, as amended from time to time thereafter.

39.     The Debtors' participation interests totaled approximately $6,000,000 (the "Ivorfield Loans").

40.     Pursuant to an order On information and belief, the aggregate principal amount outstanding under the loans (the "Ivorfield Loans") as of the date hereof is $5,999,055.

4840-2143-4089

### IV. The Collection Accounts

41.     Under the terms of the Master Participation Agreements and applicable law, GTFF and STFF have an ownership interest in the funds in the Collection Accounts maintained by Bank Leumi.

42.     At present, two Collection Accounts are still open and maintained by Bank Leumi: (a) an account in the name of TFT – Relafir S.A., which, upon information and belief, has a balance of $75,953.10 and (b) an account in the name of TFT – Polebrook, which, upon information and belief, has a balance of $150,581.77.

43.     The funds in the Relafir Collection Account were transferred in from two sources: (a) the Relafir collection account previously maintained by Deutsche Bank Trust Company Americas ("DBTCA"), which funds were wired in from Proexpo and (b) a transfer from Chaffetz Lindsey LLP, in reimbursement for amounts TFT wired out to fund professional fees in connection with litigation related to another IIG borrower.

44.     The funds in the Polebrook Collection Account were transferred in from: (a) the Polebrook collection account previously maintained by DBTCA; (b) book transfers from the Proexpo Collection Account, which funds were originally wired in directly from Proexpo; and (c) book transfers from the Ivorfield Collection Account, which funds were wired in from Ivorfield's export counterparties.

45.     Based on the order entered by this Court on October 8, 2020, authorizing the Debtors to enter into the assignment agreement with TFT to elevate their participation interests in the Polebrook Loan, the Relafir Loans, the Proexpo Loans and the Ivorfield Loans, in which the Debtors were the only parties that held interests in such loans, the Debtors are the only party

4840-2143-4089

that held, and continue to hold, a property interest in the funds in the Polebrook Collection Account and the Relafir Collection Account.

### V.  The SEC Litigation and Bank Leumi's Improper Set-Off

46.    On November 21, 2019, the SEC filed a complaint against IIG in the United States District Court for the Southern District of New York (the "District Court"), commencing a case captioned *SEC v. International Investment Group, LLC*, No. 1:19-cv-10796 (S.D.N.Y. Nov. 21, 2019).  The SEC's complaint alleged that IIG has perpetrated a string of frauds intended to cover up tens of millions of dollars in losses on non-performing loans.  GTFF and STFF were alleged to be among the victims of the fraud.  The SEC complaint sought to hold IIG liable for violating sections 206(1) and 206(2) of the Investment Advisers Act of 1940, section 10(b) of the Securities Exchange Act of and Rule 10b-5 thereunder, and section 17(a) of the Securities Act of 1933.

47.    On November 26, 2019, the District Court entered an order (the "Preliminary Order") with the consent of IIG, which provided for, among other relief, (a) an asset freeze, (b) a permanent injunction restraining IIG from engaging in further violations of the Advisors Act, Exchange Act and Securities Act, (c) disgorgement by IIG of its ill-gotten gains, together with prejudgment interest thereon, and (d) payment by IIG of civil monetary penalties.  As part of the Preliminary Order, Bank Leumi was required to freeze certain accounts it held that were administered by IIG Trade Finance and maintained by TFT, including the Bank Leumi Collection Accounts.

48.    On February 27, 2020, Bank Leumi filed a motion in the District Court seeking partial relief from the Preliminary Order.  As alleged in the motion, in November 2017, Bank Leumi provided a line of credit to IIG Trade Finance.  IIG Trade Finance's obligations under the

line of credit were secured by a pledge of all of IIG Trade Finance's personal property, including its accounts receivables and payment intangibles. Bank Leumi alleged, in its motion, that entry of the Preliminary Order triggered a default under the line of credit entitling it to exercise its rights as a secured creditor to collect the outstanding balance of $200,000. By the motion, Bank Leumi sought permission from the District Court to satisfy the outstanding loan balance by setting off against funds held in the Bank Leumi Collection Accounts.

49.     The Liquidators filed a memorandum in opposition to Bank Leumi's motion on March 13, 2020, arguing that the funds held in the Bank Leumi Collection Accounts are not assets of IIG Trade Finance or TFT and were not pledged to secure the line of credit. Rather, as the Liquidators explained, the funds in the Bank Leumi Collection Accounts were held in trust for GTFF, STFF and the other loan participants pursuant to the Master Participation Agreements. The Liquidators argued that for that reason, among others, it would not be proper for Bank Leumi to set-off against the funds held in the Bank Leumi Collection Accounts. Moreover, the Liquidators stated unequivocally in their memorandum that any setoff by Bank Leumi would be in violation of the automatic stay applicable in the GTFF Chapter 15 case.

50.     The District Court never ruled on Bank Leumi's motion. On March 30, 2020, the District Court entered a final judgment against IIG, which, among other things, held IIG liable for $35,230,779.42 in disgorgement and prejudgment interest. The March 30th order had the effect of vacating the restrictions imposed on Bank Leumi pursuant to the Preliminary Order. Accordingly, the District Court denied Bank Leumi's motion as moot.

51.     On April 2, 2020, GTFF and STFF moved for the District Court to retain jurisdiction over the SEC litigation for ancillary matters related to the judgment imposed on IIG. On April 8, 2020 and April 16, 2020, GTFF and STFF moved for the District Court, pursuant to

its ancillary jurisdiction, to order Bank Leumi and IIG Capital to turnover to them, their pro rata share of the funds held in the Bank Leumi Collection Accounts.

52.     The Debtors' applications were opposed by non-parties Girobank, N.V. and Girobank International, N.V., who also claim to be victims of IIG's fraudulent scheme. Girobank, N.V. and Girobank International, N.V. asserted, among other things, that the applications should be denied because the District Court lacked ancillary jurisdiction.

53.     Bank Leumi also filed a letter, dated April 17, 2020, in response to the April 8th and April 16th applications.  Although Bank Leumi asserted that it did not oppose the relief sought in the applications, it disclosed that, on the same date that the letter was filed, it had set-off against funds held in the Bank Leumi Collection Accounts in the amount of $234,756.66 to repay the outstanding loan balance of $200,000 due and owing by IIG Trade Finance and satisfy certain attorneys' fees incurred by Bank Leumi.  The Collection Accounts in which the Debtors held a property interest were debited at least $219,651.90 in April 2020.

54.     Bank Leumi did not provide any prior notice to the Liquidators before consummating the purported set-off.  Further, although Bank Leumi's purported set-off occurred after the Bankruptcy Court entered an order recognizing GTFF's Cayman liquidation proceeding as a foreign main proceeding, Bank Leumi did not obtain relief from the automatic stay before consummating the purported set-off.

55.     On June 5, 2020, the District Court entered an opinion and order declining to exercise its ancillary judgment.  In its decision, the court noted that there are more appropriate fora for seeking the funds in the Bank Leumi Collection Accounts, including the Cayman liquidation proceedings of GTFF and STFF and their related chapter 15 cases.

14

56.    Upon information and belief, at some point after the District Court entered its June 5th order, Bank Leumi effectuated a second set-off to the Relafir and Polebrook Collection Accounts.  The Liquidators do not have any details as to the amount of those setoffs.

57.    Accordingly, by this action, the Liquidators seek, on behalf of GTFF and STFF, an order directing (a) the turnover of the funds held by Bank Leumi in the Relafir and Polebrook Collection Accounts; and (b) the turnover to the Debtors of not less $219,651.90 that Bank Leumi improperly withdrew from the Collection Accounts as part of its purported set-off, subject to the rights of third-parties (*i.e.*, TriLinc and IIG Bank (Malta) Ltd.) in the monies held in trust by TFT.

## CLAIMS FOR RELIEF

### COUNT I
### TURNOVER – 11 U.S.C. § 542

58.    Plaintiff hereby re-alleges and incorporate all preceding paragraphs as if fully set forth herein.

59.    GTFF has a property interest in the funds held in the two Collection Accounts that remain open totaling $226,534.87 (the "GTFF Funds") for which the Collection Accounts were established.

60.    Those funds can be used by the Liquidators, on behalf of GTFF, to distribute to its stakeholders and are of more than inconsequential value to GTFF.

61.    The Defendant refuses to deliver the GTFF Funds to the Liquidators without a Court order.

62.    The GTFF Funds held in the Collection Accounts are assets of the Debtors located within the territorial jurisdiction of the United States.  Those funds should be entrusted to

15

the Liquidators, as foreign representatives in the Debtors' chapter 15 cases, pursuant to section 1521(b) of the Bankruptcy Code.

63.     The interests of the Debtors' creditors and all other parties-in-interest are and will at all times be sufficiently protected.

## COUNT II
## DECLARATORY JUDGMENT THAT BANK LEUMI'S SETOFFS VIOLATED THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(a)(3) AND ARE THUS VOID

64.     Plaintiffs hereby re-allege and incorporate all preceding paragraphs as if fully set forth herein.

65.     The Debtors had a property interest in the funds held in each of the Collection Accounts in an amount equal to their pro rata ownership interest in the loans for which the Collection Accounts were established.

66.     This Court entered an order recognizing GTFF's Cayman liquidation proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code on February 19, 2020.

67.     Section 362(a)(3) of the Bankruptcy Code, made applicable pursuant to section 1520(a)(2) of the Bankruptcy Code upon recognition of a foreign proceeding as a foreign main proceeding, operates as a stay, applicable to all entities, of – any act to obtain possession of property of the estate or of property from the estates or to exercise control over property of the estate[.]" 11 U.S.C. § 362(a)(3).

68.     Bank Leumi filed its motion in the District Court seeking to set-off against funds held in the Collection Accounts on February 27, 2020.

69.     The Debtors filed an opposition to Bank Leumi's motion and informed Bank Leumi of its interest in the funds in the collection account, that such a setoff would be improper and that it would also violate the automatic stay in effect in GTFF's Chapter 15 case.

16

70.     Bank Leumi filed a letter indicating that it had effectuated the set-off as of April 17, 2020.    A schedule of the Collection Accounts and amounts setoff from the Collection Accounts is appended hereto as <u>Exhibit A</u>.

71.     Therefore, the funds used by Bank Leumi to effectuate the set-off were property of GTFF that were in possession, custody, or control of Bank Leumi during the pendency of GTFF's chapter 15 case.

72.     Bank Leumi's setoff was a violation of the automatic stay applicable to GTFF's assets.

73.     Upon information and belief, Bank Leumi subsequently effectuated a second setoff against certain Collection Accounts.

74.     This second setoff occurred after STFF's Cayman proceeding was recognized by this Court as a foreign main proceeding.    Thus, all funds received by Bank Leumi to effectuate the second setoff were property of the Debtors that were in the possession, custody and control of Bank Leumi during the pendency of the Debtors' chapter 15 cases.

75.     Bank Leumi's second setoff was a violation of the automatic stay applicable to the Debtors' assets.

76.     Actions taken in violation of the automatic stay are void.

77.     Bank Leumi is accordingly obligated to disgorge all funds that it exercised control over for its own benefit during the pendency of the Debtors' chapter 15 cases in violation of the automatic stay.

78.     Those funds should be entrusted to the Liquidators, as foreign representatives in the Debtors' chapter 15 cases, pursuant to sections 1521(b) of the Bankruptcy Code.

4840-2143-4089

79.     The interests of the Debtors' creditors and all other parties-in-interest are and will at all times be sufficiently protected.

## COUNT III
## TURNOVER AND ACCOUNTING – 11 USC § 542

80.     Plaintiffs hereby re-allege and incorporate all preceding paragraphs as if fully set forth herein.

81.     The Debtors had a property interest in the funds held in each of the Collection Accounts, which Bank Leumi used to set-off against the obligation owed by IIG Trade Finance.

82.     The funds debited by Bank Leumi constitute property of the Debtors to be recovered and administered by the Trustee pursuant to section 541 of the Bankruptcy Code

83.     As a result of the foregoing, pursuant to section 542 of the Bankruptcy Code, the Debtors are entitled to the immediate payment and turnover from Bank Leumi of any and all funds debited from the Funds' accounts. As a result of the foregoing, pursuant to section 542 of the Bankruptcy Code, the Debtors are also entitled to an accounting of all such transfers of funds received by Bank Leumi from the Collection Accounts.

## COUNT IV
## UNJUST ENRICHMENT

84.     Plaintiffs hereby re-allege and incorporate all preceding paragraphs as if fully set forth herein.

85.     IIG Trade Finance had no economic interest in the funds in the Collection Accounts.

86.     Neither TFT nor the Debtors granted IIG Trade Finance a security interest in the Collection Accounts.

18

87.     TFT was not a guarantor of the line of credit extended by Bank Leumi to IIG Trade Finance.

88.     The Debtors were not guarantors of the line of credit extended by Bank Leumi to IIG Trade Finance.

89.     The Debtors had no outstanding obligations to IIG Trade Finance at the time Bank Leumi setoff against funds held in the Collection Accounts.

90.     Bank Leumi had no legal basis to setoff obligations owed by IIG Trade Finance against accounts it maintained for the legal owner, TFT, which were held in trust for the Debtors and other third parties.

91.     By its wrongful acts, and through the wrongful diversion and receipt of proceeds from the Collection Accounts, Bank Leumi has unjustly retained funds that belong to the Debtors and third parties.  Bank Leumi's retention of those benefits violates fundamental principles of justice, equity and good conscience.

92.     Bank Leumi is thus liable to the Debtors for unjust enrichment.

93.     The Liquidators seek restitution from Bank Leumi and an order of this Court disgorging all funds obtained by Bank Leumi from the Collection Accounts, including the $219,651.90 that it used to effectuate its purported set-off.

**COUNT V**
**CONVERSION**

94.     Plaintiffs hereby re-allege and incorporate all preceding paragraphs as if fully set forth herein.

95.     Bank Leumi intentionally withdrew $234,756.66 of funds held in the Collection Accounts to effectuate a purported setoff of a debt owed to it by IIG Trade Finance and pay

related attorneys' fees incurred by Bank Leumi. IIG Trade Finance had no economic interest in the funds in the Collection Accounts.

96.    The Debtors each had an ownership interest in Collection Accounts from which at least $219,651.90 of the funds that Bank Leumi withdrew to effectuate the purported setoff. When Bank Leumi effectuated the purported setoff, it knew or should have known of the Debtors' ownership interest in those funds.

97.    Bank Leumi's actions were in derogation of the Debtors' ownership interest in and rights to the funds that were subject to the purported setoff. In withdrawing the funds from the Collection Accounts, Bank Leumi improperly exercised the right of ownership over the Debtors' property to the exclusion of the Debtors' rights.

98.    Bank Leumi is liable for conversion under applicable non-bankruptcy law. The Debtors are entitled to damages from Bank Leumi in an amount equal to the funds that it improperly converted plus interest.

WHEREFORE, the Liquidators respectfully seek entry of a judgment:

(a)    ordering Defendant to turn over and deliver the GTFF Funds totaling $226,534.87 to the Liquidators;

(b)    (i) ordering Defendant to turn over, disgorge, or pay damages equal to not less than $219,651.90 plus interest for the funds that Bank Leumi wrongfully withdrew from the Collection Accounts in which the Debtors has a property interest to effectuate an improper set-off, or alternatively (ii) imposing a constructive trust on the assets of Bank Leumi in the amount of not less than $219,651.90;

(c)    ordering Defendant to provide Plaintiffs with an accounting of all monies received by Bank Leumi from the Collection Accounts;

20

(d)      entrusting distribution of the foregoing funds to the Liquidators, as the duly recognized foreign representatives in the Debtors' chapter 15 cases;

(e)      awarding the Liquidators their attorneys' fees plus the costs and other expenses incurred in this action; and

(f)      granting the Liquidators such further relief as may be deemed appropriate under the circumstances.

DATED: May 14, 2021   Respectfully submitted,
    New York, NY

        PILLSBURY WINTHROP SHAW PITTMAN LLP

        By:/s/ John A. Pintarelli
         John A. Pintarelli
         Rahman Connelly
         31 West 52nd Street
         New York, NY 10019-6131
         Phone: 212.858.1000
         Fax: 212.858.1500
         john.pintarelli@pillsburylaw.com
         rahman.connelly@pillsburylaw.com

        *Attorneys for Plaintiffs*

4840-2143-4089

**EXHIBIT A**

| Account | April 2020 Debits | Cumulative Setoff Amount | Share of the Improperly Debited Funds | | | |
|---|---|---|---|---|---|---|
| | | | GTFF | STFF | TriLinc | Malta Bank |
| Polebrook | ($4,491.96) | ($4,491.96) | $4,491.96 | | | |
| Ceper | ($2.86) | ($4,494.82) | $1.14 | $1.72 | | |
| FRCC | ($69,017.73) | ($73,512.55) | $12,002.18 | $57,015.55 | | |
| Relafir | ($2,265.73) | ($75,778.28) | $2,265.73 | | | |
| Ivorfield | ($6,169.94) | ($81,948.22) | $2,097.78 | $4,072.16 | | |
| Imperio | ($2.17) | ($81,950.39) | $1.06 | $1.11 | | |
| San Agustin | ($17,519.84) | ($99,470.23) | $3,679.17 | $13,840.67 | | |
| SanCor | ($81,805.55) | ($181,275.78) | | $57,877.43 | $17,997.22 | $5,930.90 |
| Tuper | ($14,983.58) | ($196,259.36) | | $7,491.79 | | $7,491.79 |
| CAGSA | ($5.96) | ($196,265.32) | $1.01 | $2.03 | $2.21 | $0.72 |
| CCP | $0.00 | ($196,265.32) | | | | |
| Citricola Saltena | ($8,235.66) | ($204,500.98) | $3,788.40 | $4,447.26 | | |
| Proexpo S.A. | ($15,094.91) | ($219,595.89) | $3,471.83 | $11,623.08 | | |
| Representaciones Saldana S.A. | ($11.65) | ($219,607.54) | $4.89 | $6.41 | $0.35 | |
| Prosesamo Holding Ltd. | ($44.36) | ($219,651.90) | $15.97 | $28.39 | | |
| | | | | | | |
| | | TOTALS | $31,821.14 | $156,407.58 | $17,999.78 | $13,423.41 |