**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| In re: | : | Chapter 15 |
| | : | |
| IIG GLOBAL TRADE FINANCE FUND LTD. (in Official Liquidation), *et al.*, | : | Case No. 20-10132 (MEW) |
| | : | |
| Debtors. | : | (Jointly Administered) |

---

| | | |
|---|---|---|
| IIG GLOBAL TRADE FINANCE FUND LIMITED (in Official Liquidation) and IIG STRUCTURED TRADE FINANCE FUND LTD. (in Official Liquidation), | : | |
| | : | |
| Plaintiffs, | : | Adv. Pro. No. 21-01136 (MEW) |
| | : | |
| v. | : | |
| | : | |
| VALLEY NATIONAL BANK (as successor-by-merger to BANK LEUMI USA), | : | |
| | : | |
| Defendant. | : | |

---

**DECISION REGARDING PENDING MOTION AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

A P P E A R A N C E S:

Pillsbury Winthrop Shaw Pittman LLP
New York, New York
*Attorneys for Plaintiffs IIG Global Trade Finance Fund Ltd. (In Official Liquidation) and IIG Structured Trade Finance Fund Ltd. (In Official Liquidation)*
   By:  John A. Pintarelli, Esq.
        Patrick E. Fitzmaurice, Esq.

Sherman Atlas Sylvester & Stamelman LLP
New York, New York
*Attorneys for Defendant Valley National Bank (as successor-by-merger to Bank Leumi USA)*
   By:  Jordan D. Weinreich, Esq.

1

**HONORABLE MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

Plaintiffs IIG Global Trade Finance Fund Ltd. ("**GTFF**") and IIG Structured Trade Finance Fund, Ltd. ("**STFF**" and, together with GTFF, the "**Debtors**") are debtors in two jointly administered chapter 15 proceedings pending in this Court. The Debtors filed this adversary proceeding to compel Defendant Valley National Bank (as successor-by-merger to Bank Leumi USA) ("**Bank Leumi**")[1] to turn over monies held in certain accounts. The Debtors also seek a judgment declaring that certain prior setoffs that Bank Leumi applied against the accounts were improper and should be reversed. Bank Leumi filed an answer and a counterclaim for declaratory relief, asking for judgment holding that the setoffs were proper and were within Bank Leumi's rights. Bank Leumi also filed a motion for interpleader, seeking permission to deposit $144,811.49 (the balance, after setoffs, of the monies held in the relevant accounts) with the Court registry.

On August 31, 2021, this Court entered an Order that authorized Bank Leumi to deposit $144,811.49 in the court registry. The only remaining issues as to Bank Leumi are as to the prior setoffs and whether they were proper. If they were not proper, then the Debtors contend that the setoffs should be undone and that Bank Leumi should be compelled to turn over the additional monies.

The Debtors and Bank Leumi have filed cross-motions for summary judgment on the setoff issues. The relevant facts (most of which are undisputed) are as follows:

1.  GTFF and STFF are Cayman Islands investment funds. They entered into investment advisory agreements with an entity named IIG Investment Group, LLC ("**IIG**") in

---

[1] On April 1, 2022, Bank Leumi USA merged with and into Valley National Bank, with Valley National Bank as the surviving entity. Notice of Merger, ECF No. 51. For purposes of this Decision, the Defendant will be referred to as Bank Leumi.

2

2017.  Under the investment advisory agreements, IIG selected and managed the investments made by GTFF and STFF.  Those investments principally were in so-called "trade finance loans" made by the Trade Finance Trust ("**TFT**"), an affiliate of IIG.

2. GTFF and STFF entered into master participation agreements with TFT (the "**Participation Agreements**") that governed their dealings with TFT.  Pursuant to those agreements, GTFF and STFF bought participation interests in various loans that were arranged by others and that were acquired by TFT.  TFT agreed, among other things, that recoveries it received with respect to outstanding loans would be held in trust for the persons who owned participation interests in those loans.  An entity named IIG Trade Finance, LLC ("**IIG Trade Finance**"), another affiliate of IIG, acted as the administrator for TFT under the terms of the Participation Agreements.

3. In November 2017, IIG Trade Finance obtained a loan from Bank Leumi in the amount of $200,000 (the "**IIG Trade Finance Loan**").  The IIG Trade Finance Loan was scheduled to mature in 2018 but apparently its maturity was extended a number of times.  There is no indication in the record that IIG Trade Finance obtained the loan on behalf of any other entity or that any affiliate of IIG Trade Finance was a guarantor of the loan.

4. In 2019, TFT set up a number of accounts at Bank Leumi (the "**Collection Accounts**") to hold payments that were received with respect to outstanding loans.  In January 2019, TFT entered into an *Entity Client General Resolutions and Relationship Agreement* with Bank Leumi in connection with the opening of the Collection Accounts.  As noted above, IIG Trade Finance was the administrator of TFT.  The agreement to open the accounts was signed on behalf of TFT by Thomas LaVecchia, who was identified as the "Senior Director, IIG Trade Finance LLC, Administrator for Trade Finance Trust."

3

5.  The Collection Accounts were subject to the terms of an *Account Agreement and Privacy Notice* (the "**Account Agreement**").  Among other things, the Account Agreement included certain indemnification provisions.  Those provisions state, in part, that:

> Except as otherwise stated in this Agreement, you agree to indemnify, defend and hold the Bank, its successors, assigns, correspondents, directors, officers, employees and agents harmless from all losses, costs, damages, fines, expenses (including, without limitation, attorney's fees) and liability for any claims or demands, actions, proceedings, related to or arising out of: (a) your actions and omissions in connection with your accounts or our services, (b) ***action or omission on the part of any individual who has been listed as a person authorized to act on your behalf in any document provided by you to the Bank***, (c) our actions and omissions, provided that they are taken or omitted in accordance with this Agreement or your instructions … This provision will survive the termination of this Agreement or any account or transaction entered with you.

Kennedy Decl. Ex. AQ, p. 36-37, ECF No. 31-47; Meyer Decl. Ex. B, p. 36-37, ECF No. 36-3 (emphasis added).

6.  The Account Agreement also includes a section regarding Bank Leumi's potential recovery of costs and fees incurred in responding to the service of legal process upon the bank.  It provides, in part, that:

> Upon receipt of any legal process, you will be liable to us for our processing fee, and reimbursement for our record research, reproduction and handling costs, as well as any legal fees or court costs we may incur.  We may deduct such fees, as well as any expenses, including, without limitation, attorneys' fees in connection with any such document or legal process, from your account or any other account you may have with us without prior notice to you, or we may bill you directly for such expenses and fees, even if your account is closed.

*Id*. at p. 35.

7.  On November 21, 2019, the Securities and Exchange Commission filed a complaint against IIG (the "**SEC Complaint**"), alleging that IIG had engaged in a widespread fraud.  Among other things, the SEC charged that IIG and its affiliates had fraudulently sold participation interests in loans that were overvalued and, in some cases, fictitious.  The United States District Court for

4

21-01136-mew    Doc 54    Filed 05/17/22    Entered 05/17/22 11:23:48    Main Document
Pg 5 of 14


the Southern District of New York entered a preliminary asset freeze order (the "**Asset Freeze Order**") in November 2019 that required Bank Leumi to freeze accounts administered by IIG Trade Finance and maintained by TFT.

8.      The Debtors were customers of IIG. It does not appear that any authority has charged them with any wrongdoing at any time, or with having been anything but victims in connection with the fraud. Similarly, it does not appear that Bank Leumi has been charged with any wrongdoing at all in connection with any of these matters.

9.      GTFF entered liquidation in the Cayman Islands by way of a winding up order dated October 23, 2019, just prior to the filing of the SEC Complaint. STFF entered liquidation by way of a winding up order dated January 31, 2020.

10.     The Liquidators of GTFF filed a chapter 15 petition in this Court on January 17, 2020, and this Court entered a recognition order on February 19, 2020 (the "**GTFF Recognition Order**"). *See* Order Granting Recognition and Relief in Aid of a Foreign Main Proceeding Pursuant to Sections 1504, 1509, 1515, 1517, 1520 and 1521 of the Bankruptcy Code, *In re IIG Global Trade Finance Fund Ltd.*, No. 20-10132 (Bankr. S.D.N.Y. Feb. 19, 2020), ECF No. 9. The GTFF Recognition Order imposed the automatic stay under section 362 of the Bankruptcy Code with respect to GTFF and its properties in the territorial jurisdiction of the United States. *Id.* at ¶ 3; *see also* 11 U.S.C. § 1520. The GTFF Recognition Order prohibited any action by any person to execute against GTFF's properties, to take control of such properties, to perfect liens against such properties or to transfer or dispose of such properties. *Id.*

11.     On February 27, 2020, Bank Leumi asked the District Court for partial relief from the Asset Freeze Order, alleging (among other things) that the IIG Trade Finance Loan was in default and that Bank Leumi should be entitled to set off the unpaid loan balance against funds

held in various Collection Accounts. GTFF opposed that relief, arguing that such a setoff would violate the stay granted under the GTFF Recognition Order because some of the funds in the Collection Accounts belonged to GTFF.

12. The District Court entered a final judgment in the proceeding against IIG on March 30, 2020. The Asset Freeze Order was lifted when the judgment was entered. The District Court made no rulings as to Bank Leumi's motion or as to GTFF's objection.

13. In April 2020, GTFF and STFF filed motions asking the District Court to authorize the release, to GTFF and STFF, of some of the funds in the Collection Accounts. On April 17, 2020, before the District Court ruled on the motions filed by GTFF and STFF, Bank Leumi set off $236,360.08 (the "**First Setoff**") against the twenty-one Collection Accounts then-maintained at Bank Leumi in the name of TFT. The setoff was made to cover the outstanding IIG Trade Finance Loan balance of $200,000 due and owing by IIG Trade Finance and certain attorneys' fees incurred by Bank Leumi. Meyer Decl. ¶¶ 13, 16 and 19, ECF No. 41. The First Setoff was effected on a *pro rata* basis based on the total amount of funds across twenty-one Collection Accounts. *Id*. at ¶ 20.

14. STFF filed a chapter 15 petition in this Court on May 8, 2020, and this Court entered a recognition order on June 19, 2020.

15. On October 10, 2020, this Court entered an order that approved an assignment agreement pursuant to which TFT assigned its rights and interests in various Collection Accounts to the Debtors.

16. On March 4, 2021, Bank Leumi set off $37,636.31 (the "**Second Setoff**", and together with the First Setoff, the "**Setoffs**") to pay additional attorneys' fees and costs incurred by Bank Leumi since the date of the First Setoff. *Id*. at ¶¶ 23-24. Some of the original Collection

Accounts had been closed, so the Second Setoff was effected on a *pro rata* basis against the remaining seven Collection Accounts. *Id.* at ¶¶ 21, 23-24.

### **Alleged Violations of the Automatic Stay**

The Debtors allege that the Setoffs violated the automatic stays in their chapter 15 cases. The Debtors' argument is premised on the contention that the Debtors owned a direct property interest in the Collection Accounts that were the subject of the Setoffs. Those contentions fail as to the First Setoff, for two reasons.

First, it is undisputed that the First Setoff occurred before STFF filed its chapter 15 petition. The First Setoff could not have violated any stay under the Recognition Order in STFF's case.

Second, it is undisputed that the First Setoff occurred prior to the date of the Assignment Agreement. Prior to the Assignment Agreement, the Debtors held only participation interests in the underlying loans. Those interests were governed by the terms of the Participation Agreements. *See Stillwater Liquidating LLC v. Net Five at Palm Pointe, LLC (In re Stillwater Asset Backed Offshore Fund Ltd.)*, 559 BR 563, 599 (Bankr. S.D.N.Y. 2016) ("The only way to figure out what a participation interest is, and what rights it actually grants, is to look at the agreements themselves."). Many participation agreements establish trust relationships, *id.* at 599-604, and in this case the Debtors have previously agreed that pursuant to the Participation Agreements the Debtors were the beneficiaries of trusts, with TFT as the trustee. The trusts, however, were separate entities, and the properties that belonged to the trusts were not properties belonging directly to the Debtors. *Id.*

The Debtors have acknowledged in the course of the proceedings before this Court that property owned by TFT, as trustee, was not directly owned by the Debtors themselves. Perhaps the Debtors wish to argue that they had rights to control or to terminate the trusts, or that the terms

7

of the trusts otherwise were such that the trusts should be ignored and that the monies held by the trusts should be treated as property of the Debtors themselves. However, they have not briefed any such issues for this Court's consideration and have not identified any reasons why the separate existence of the trusts should be ignored.

For these reasons, summary judgment is denied as to the Debtors' contentions that the First Setoff violated the automatic stay.

The Second Setoff occurred after the date of the Assignment Agreement. At the time of the Second Setoff, pursuant to the Assignment Agreement, the Debtors had stepped into the shoes of TFT with respect to the Collection Accounts. The Collection Accounts therefore had become accounts of the Debtors and the Debtors had all of the rights and obligations that TFT had as the trustee with respect to those accounts. Despite this, the Second Setoff was effected against all of the Collection Accounts that remained open at Bank Leumi.

Bank Leumi contends that it was not aware that TFT's interests in these particular accounts had been transferred and assigned to the Debtors pursuant to the Assignment Agreement. Bank Leumi's knowledge may be relevant to sanctions or remedy issues, but the Second Setoff violated sections 362(a)(3) and 362(a)(7) regardless of Bank Leumi's knowledge of the stay. *Church Mut. Ins. Co. v. Am. Home Assur. Co. (In re Heating Oil Partners, LP)8*, 422 F. App'x 15, 18 (2d Cir. 2011) ("The stay takes effect automatically and without the requirement of notice to affected parties"); *see also In re Sklar*, 626 BR 750, 761 (Bankr. S.D.N.Y. 2021) ("In the Second Circuit, actions commenced or continued in violation of the stay are void *ab initio*. … 'The action is void even where the acting party had no actual knowledge of the stay.'" (quoting *Hearst Mags. v. Stephen L. Geller, Inc.*, No. 08 Civ. 11312 (LLS), 2009 U.S. Dist. LEXIS 30481, 2009 WL 812039, at *1 (S.D.N.Y. Mar. 24, 2009))).

Accordingly, summary judgment is granted in favor of the Debtors with respect to their contentions that the Second Setoff violated the automatic stay and therefore is void. However, summary judgment is denied to the extent that the Debtors seek any particular sanctions for the stay violation. The extent of Bank Leumi's knowledge is unclear and requires a trial to the extent that the Debtors seek any sanction beyond the invalidation of the Second Setoff.

In addition, the invalidation of the Second Setoff just means that the setoff violated the automatic stay. It does not mean that Bank Leumi lacked legal rights. The automatic stay requires that the Second Setoff be undone, but Bank Leumi may still contend that it is entitled to retain the relevant funds pursuant to its setoff rights under section 553 of the Bankruptcy Code, and may still seek this Court's approval of that setoff.

## Validity of the Setoffs

The Debtors own TFT's rights with respect to the Collection Accounts and are entitled to assert whatever rights TFT had to challenge the Setoffs. The Debtors contend that they are entitled to summary judgment holding that the Setoffs were improper. Bank Leumi has countered with a cross-motion for summary judgment, asking the Court to hold that the Setoffs were in accordance with Bank Leumi's contract rights.

## The Setoff for the Unpaid Trade Finance Loan

TFT and the Debtors were not obligors or guarantors with respect to the IIG Trade Finance Loan. Bank Leumi nevertheless contends that the indemnity provisions of TFT's Account Agreement require TFT to indemnify Bank Leumi against the fact that IIG Trade Finance did not repay the loan. Bank Leumi reasons as follows:

- The Account Agreement requires TFT to indemnify Bank Leumi against losses that relate to or arise out of "action or omission on the part of any individual who has been

9

> listed as a person authorized to act on your [TFT's] behalf in any document provided by you to the Bank;"

- The individual who signed the Account Agreement on behalf of TFT, and who was authorized to do so, was an individual employed by IIG Trade Finance;

- IIG Trade Finance also was authorized to act on behalf of TFT;

- The failure by IIG Trade Finance to repay its loan was a failure by a person who was authorized to act for TFT; and

- TFT therefore is liable to repay the loan under the indemnity provisions of the Account Agreement.

Bank Leumi's contentions are without merit as a matter of law.

The Account Agreement is governed by New York law. Under New York law, indemnities are strictly construed. *See Hartz Consumer Group, Inc. v. JWC Hartz Holdings, Inc.*, 2005 N.Y. Misc. LEXIS 8534, *15 (N.Y. Sup. Ct. 2005) ("Not only the intent to indemnify, but also the scope of the indemnification, must be 'unmistakably clear from the language of the promise' or 'clearly implied from the language and purpose of the entire agreement.'" (quoting *Hooper Assoc., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491-92 (N.Y. 1989))). There are two separate reasons why the indemnity provisions in the Account Agreement cannot reasonably be construed in the manner that Bank Leumi suggests.

First, by their terms the indemnity provisions only apply to the extent that Bank Leumi incurs losses as the result of actions by "individuals" who were authorized to act for TFT. The charge that Bank Leumi has made here is based on the outstanding balance of the IIG Trade Finance Loan. That loan was owed by an entity (IIG Trade Finance) and not by any individual.

There is no contention that any "individual" who had authority to act on behalf of TFT did anything that harmed Bank Leumi in any way.

      Second, the indemnity only applies to losses that arise from actions by an individual "who has been listed as a person authorized to act on [TFT's] behalf in any document provided to [TFT] by the Bank." Where (as here) an indemnity refers to people with reference to the capacities in which they act, New York law deems the indemnity to be limited to actions by such persons in such capacities. *See BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 415 (S.D.N.Y. 2011) ("Where the indemnity clause extends only to a plaintiff's actions in a specific capacity or to specific types of losses, that limitation will be given effect."); *see also Haynes v. Kleinewefers and Lembo Corp.*, 921 F.2d 453, 456 (2d Cir. 1990) ("When a claim is made that a duty to indemnify is imposed by an agreement, that agreement must be strictly construed so as not to read into it any obligations the parties never intended to assume."). Here, there is no contention that the IIG Trade Finance Loan was arranged by a person who, in doing so, was acting on behalf of TFT. Similarly, there is no allegation that anyone was acting on behalf of TFT in any way in connection with the failure by IIG Trade Finance to repay the loan. The connection between IIG Trade Finance and TFT is merely a fortuitous one; that connection has nothing to do with the IIG Trade Finance Loan or with IIG Trade Finance's failure to repay the loan.

      During oral argument of the motions, Bank Leumi's counsel took the position that TFT is liable for any losses caused by IIG Trade Finance, even if those losses cannot be attributed to individuals who were authorized to act for TFT and even if those losses cannot be attributed to actions taken by anyone on behalf of TFT or in the course of representing TFT. In Bank Leumi's view, the indemnity applies to any loss that arises out of anything done by somebody who happens also to be an authorized representative of TFT, regardless of whether that person is an individual

11

and regardless of whether the person was acting for TFT in connection with the matters that gave rise to the loss.  In short, Bank Leumi seeks to interpret the indemnify as an outright guaranty by TFT of the IIG Trade Finance debt.  The indemnity provisions of the Account Agreement cannot be reasonably construed in this fashion for the reasons stated above.

Bank Leumi acknowledges that none of the other provisions of the Account Agreement, or any other agreement, made TFT liable for the unpaid debts of IIG Trade Finance.  The sole basis upon which the loan setoff was allegedly permitted is the above-quoted language in the Account Agreement.  As a matter of law, that provision did not entitle Bank Leumi to charge the Collection Accounts for unpaid debts owed by an affiliate of TFT.  The Debtors therefore are entitled to partial summary judgment in their favor, holding that the First Setoff was invalid to the extent that it covered principal and interest on the IIG Trade Finance Loan.

**The Setoffs for Legal Fees and Expenses**

The Account Agreement permitted Bank Leumi to make setoffs for costs and fees that are attributable to responses to legal process.  However, the record makes clear that the legal fees and expenses that Bank Leumi includes in the purported Setoffs included not just the legal fees and costs that Bank Leumi incurred in responding to the asset freeze orders that were issued by the District Court, but also to all other matters that relate to the disputes over these accounts.  For example, it appears that the fees included those that were incurred in connection with Bank Leumi's requests, to the District Court, for permission to recover the IIG Trade Finance Loan from the Collection Accounts.  It appears that the Setoffs may also include fees and costs incurred in connection with the proceedings in this Court and in connection with the disputes between the Debtors and Bank Leumi.

Bank Leumi may well have a valid right to recover fees and expenses to the extent they were incurred in responding to legal process, as contemplated by the terms of the Account Agreement. However, there is no evidence in the record before me that would allow me to enter summary judgment in favor of either party as to any particular item of fees or expenses. A trial plainly is required, unless the parties are able to reach a reasonable agreement on this issue that would make a trial unnecessary.

The Debtors have argued that the Collection Accounts are trust accounts and that the legal fees and expenses cannot be deducted from them, and that Bank Leumi needs instead to look to accounts that contain funds owned directly by TFT. However, it appears that the Asset Freeze Order was applicable directly to these particular trust accounts. The costs that were incurred were attributable to the trust accounts themselves, not to any non-trust activity of TFT. I see no reason why the Account Agreements would not be applicable in those circumstances – subject, of course, to appropriate proof that Bank Leumi actually incurred fees and expenses in responding to process of the type covered by the Account Agreement.

## Conclusion

For the foregoing reasons:

(a)     Partial summary judgment is denied with respect to the Debtors' contentions that the First Setoff violated the automatic stay;

(b)     Partial summary judgment will be granted in favor of the Debtors with respect to their contentions that the Second Setoff violated the automatic stay, but without prejudice to Bank Leumi's rights to request permission to make such a setoff;

(c) Partial summary judgment is denied to the extent that the Debtors seek any sanction or other relief with respect to their contentions that the Second Setoff violated the automatic stay;

(d) Partial summary judgment will be granted in favor of the Debtors with respect to their contentions that Bank Leumi was not entitled to recover any portion of the unpaid IIG Trade Finance Loan from the TFT Collection Accounts and with respect to their contentions that the First Setoff should be reversed to the extent it related to such amounts;

(e) Partial summary judgment is denied as to the parties' respective contentions regarding Bank Leumi's alleged rights to recover legal fees and costs;

(f) The parties' respective motions and cross-motions for summary judgment are denied except as set forth above; and

(g) The parties are directed to confer and to appear at a conference on May 24, 2022 at 10:00 AM to schedule a date for the trial of any remaining issues in this adversary proceeding.

Dated: New York, New York
May 17, 2022

/s/ Michael E. Wiles
Honorable Michael E. Wiles
United States Bankruptcy Judge